**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

| | |
|---|---|
| BRADLEY Y. SCHORR; LORI A. SCHORR, Individually and on Behalf of a Class of Similarly Situated Persons, | : <br> : <br> : <br> : |
| Plaintiffs, | : <br> : |
| v. | :    CASE NO.: 4:07-CV-019 (WLS) |
| COUNTRYWIDE HOME LOANS, INC., | : <br> : <br> : |
| Defendant. | : <br> : |

**ORDER**

Before the Court is Defendant Countrywide Home Loans, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint. (Doc. 64.) For the following reasons, Defendant Countrywide Home Loans, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 64) is **DENIED**.

**I.     RELEVANT PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiffs have brought the above-captioned action, seeking to represent themselves "individually and on behalf of a class of all persons who granted one or more security deeds which was secured by property in Georgia for whom [Countrywide Home Loans, Inc. ("CHL")] or a subsidiary of [CHL] was the grantee or holder of the security deed or servicing agent of the underlying loan, which security deeds were not cancelled within sixty (60) days of the underlying loan being paid in full in accordance with O.C.G.A. § 44-14-3." (Doc. 61, First Amended Complaint, hereinafter referred to as "FAC," ¶ 2.)

Though this case was filed in 2007 and Plaintiffs have been long identified as the "original" grantors of the security deed in question, Defendant moved to dismiss the

1

FAC on February 19, 2013, alleging for the first time that the term "grantors" as set forth in O.C.G.A. § 44-14-3 does not cover original grantors of the security deed alleged not to have been cancelled. (Doc. 64.) Rather, Defendant contends that a strict reading of the statutory definition of grantor reflects that the liquidated damages provision is only intended to provide a remedy to "heirs, devisees, executors, administrators, successors, transferees, or assigns." O.C.G.A. § 44-14-3 ("'Grantor' means heirs, devisees, executors, administrators, successors, transferees, or assigns.") Accordingly, Defendant contends that Plaintiffs, as the original grantors of the security interest, do not have standing under the statute's enumeration of covered parties.

On March 24, 2013, Plaintiffs filed a response in opposition to Defendant's Motion to Dismiss. (Doc. 70.) Therein, Plaintiffs contend that the Court should construe the term "grantors" as used in the statute to confer standing on Plaintiffs. Per Plaintiffs, the statute's definition of "grantor" expressly *includes* transferees, assignees, and other successors of the original grantor of the security deed *but not* to the *exclusion* of the original grantor. (*Id.* at 1-2.) In support of such a construction, Plaintiffs point to the legislative intent of the Georgia legislature in enacting § 44-14-3—to provide broad redress to grantors against "grantees who unreasonably withhold satisfaction or cancellation." (*Id.* at 2) (quoting *Mitchell v. Oliver*, 254 Ga. 112, 115-16 (1985)). According to Plaintiffs, to read the statute to exclude the original grantor would lead to an absurd result contrary to this intent. (*Id.*) Plaintiffs also note that Georgia courts have, in the past, construed § 44-14-3 in a way that makes it clear that original grantors of the security instrument have standing under the statute, despite the enumeration of covered parties that, on its face, appears to leave out original grantors. However, alternatively, Plaintiffs request that if "the Court has any doubt as to the proper interpretation of this state statute, the Court should certify the question to the Supreme

2

Court of Georgia before adopting a reading that would largely gut the effectiveness of the remedy created by the Georgia legislature." (*Id.*)

On April 25, 2013, Defendant filed its reply in support of its Motion to Dismiss. (Doc. 75.)  Defendant contends that the statute does not merely define "grantors" to *include* successors in interest; rather, it defines the term to "mean" such successors. (*Id.* at 2.)  Defendant also argues that the legislature's act of replacing the term "include" with the term "means" in 1983 implies that the Georgia legislature "acted specifically to exclude a mere grantor of a security instrument in the definition" of "grantor." (*Id.* at 3.)  Defendant also contends that Plaintiffs' argument of absurd consequences ignores the fact that § 44-14-3 has been "routinely" construed in a manner that has denied standing to other classes of plaintiffs. (*Id.* at 5-6.)  Finally, as to Plaintiffs' request for certification in lieu of an unfavorable ruling, Defendant maintains that there is no need to certify interpretation of the term "grantor" to the Supreme Court, arguing that this Court can sufficiently apply the plain language of § 44-14-3 to determine whether Plaintiffs have standing.  The briefing is fully complete, and the Court finds Defendant's motion to be ripe for review.

## II.     DISCUSSION

### A.     Legal Standard for Rule 12(b)(6) Motion.

Federal Rule of Civil Procedure 12(b)(6) permits a party to assert by motion the defense of failure to state a claim upon which relief can be granted.  A motion to dismiss a plaintiff's complaint under Rule 12(b)(6) should not be granted unless the plaintiff fails to plead enough facts to state a claim to relief that is plausible, and not merely just conceivable, on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Dismissal for failure to state a claim is proper if the factual allegations are not 'enough to raise a right to relief above the speculative level.'"  *Edwards v. Prime, Inc.*, 602 F.3d

1276, 1291 (11th Cir. 2010) (quoting *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008)). "Stated differently, the factual allegations in the complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief.'" *Edwards*, 602 F.3d at 1291 (quoting *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007)).

While the Court must conduct its analysis "accepting the allegations in the complaint as true and construing them in the light most favorable to the Plaintiff," *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003), in evaluating the sufficiency of a Plaintiff's pleadings the Court must "make reasonable inferences in [p]laintiff's favor, 'but we are not required to draw Plaintiff's inference.'" *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (quoting *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).) The Supreme Court instructs that while on a Motion to Dismiss "a court must accept as true all of the allegations contained in a Complaint," this principle "is inapplicable to legal conclusions," which "must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-54 (2009) (citing *Twombly*, 550 U.S. at 555, for the proposition that courts "are not bound to accept as true a legal conclusion couched as a factual allegation" in a complaint.) In the post-*Twombly* era, "[d]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

**B.    Analysis**

The issue of whether the Georgia legislature intended to designate "heirs, devisees, executors, administrators, successors, transferees, or assigns" as the exhaustive list of parties with the standing to pursue remedies under O.C.G.A. § 44-14-3 has never been squarely addressed by any court in Georgia. However, in determining

4

whether Defendant's strict-constructionist view carries the day over Plaintiffs' legislative-intent-based construction, the Court first turns to the rules of statutory construction.

"[T]he initial rule of statutory construction is to look to the legislative intent and to construe statutes to effectuate that intent." *Gavin v. State*, 292 Ga. App. 402, 403-04 (2008) (citations omitted). "In arriving at the intention of the legislature, it is appropriate for the court to look to the old law and the evil which the legislature sought to correct in enacting the new law and the remedy provided therefor." *Mitchell v. Oliver*, 254 Ga. 112, 116 (1985) (citations omitted). On the other hand, "[w]hile the legislative intent prevails over the literal import of words, where the statutory language is plain and susceptible of but one natural and reasonable construction, the court has no authority to place a different construction upon it, but must construe it according to its terms." *Gavin*, 292 Ga. App. at 404. To this end, the court "is not authorized to disregard any of the words [of a statute] unless the failure to do so would lead to an absurdity manifestly not intended by the legislature." *Id.* The court must construe the statute so as "to give sensible and intelligent effect to all of its provisions and should refrain, whenever possible, from construing the statute in a way that renders any part of it meaningless." *Id.*; *see also Mitchell*, 254 Ga. at 116 ("It is the duty of the court to consider the results and consequences of any proposed construction and not so construe a statute as will result in unreasonable or absurd consequences not contemplated by the legislature. The construction must square with common sense and sound reasoning.")

According to the Supreme Court of Georgia, "[t]he plain legislative purpose underlying OCGA § 44-14-3(c) is to protect grantors from victimization by grantees who unreasonably withhold satisfaction or cancellation. To accomplish this purpose, the statute compensates the victimized grantor, punishes the grantee who has perpetrated

5

the abuse, and attempts to deter future abuses."[1]  *Mitchell*, 254 Ga. at 116.  A review of this intent fails to reveal any indication that the Georgia legislature intended to limit the scope of § 44-14-3's remedies to only abuses perpetrated on successors in interest.  Such an inference of true legislative intent is, in actuality, far more difficult to reach—that the Georgia legislature thought that successors needed protection from unreasonable withholding of satisfaction or cancellation where original grantors did not.  The Court finds this to be a dubious proposition as best.

Further bolstering the Court's doubt as to the reasonableness of such an interpretation of the legislative intent is the fact that Defendant made no attempt to proffer any arguments as to a rational reason why the Georgia legislature would have purposely sought to exclude original grantors of the security interest.  At best, Defendant was only able to point to instances where Georgia courts have limited recovery under § 44-14-3, as if to show that these cases demonstrate that restrictive constructions of § 44-14-3 are *ipso facto* reasonable.  However, a review of these cases reflects that the limits on recovery articulated by the courts were well reasoned, consistent with the legislative purpose of § 44-14-3, and distinguishable from the case at bar.

In *Mitchell*, the court concluded that imposing statutory penalties on a grantee who had a good faith belief that the debt was not paid in full "would not serve the statutory purpose of punishing grantees who have unreasonably withheld cancellation,

---

[1] Ideally, "[a] court is usually able to determine legislative intent by reading the statute literally—i.e., by affording the language used its plain and ordinary meaning."  *State v. Free At Last Bail Bonds*, 285 Ga. App. 734, 736 (2007) (citing O.C.G.A. § 1-3-1(b)) (additional citations omitted).  However, the statement the parties dispute—"'grantor' means heirs, devisees, executors, administrators, successors, transferees, or assigns"—is by itself definitional and does nothing to provide the Court with insight about the legislative intent behind the statute and to whom the Georgia legislature intended to confer standing, in a manner consistent with the purpose of the statute.  Thus, the Court will start its analysis with the known legislative intent behind the statute.

and in fact would hinder the object of deterrence by arbitrarily and capriciously imposing penalties where none are merited." 254 Ga. at 116.

In *Associated Credit Union v. Pinto*, a former owner of real property brought suit to obtain statutory damages for failure to comply with § 44-14-3. 297 Ga. App. 605 (2009). The court found that, at the time he filed his complaint to recovery statutory damages, the plaintiff-appellee no longer owned the property at issue, and therefore, lacked standing under § 44-14-3's definition of "grantor." Though the court in *Pinto* followed the literal definition of "grantor" as set forth in § 44-14-3 in determining that the plaintiff lacked standing, key to the court's ruling appeared to be the fact that the security deed *was* cancelled by the time plaintiff filed his suit and the successful conveyance demonstrated that the failure to cancel the security deed in timely fashion was of little to no consequence to the former owner. *Id.* at 607.

In *Heritage Creek Development Corp. v. Colonial*, 268 Ga. App. 369, 373 (2004), the court concluded that a plaintiff waived any claims it might have had to statutory damages when it signed loan modification documents releasing the grantee from any claims arising out of the sale of the properties at issue. Notably, the court made clear that the defendant might have been liable under § 44-14-3 to the plaintiff—the original grantor of the security interest—had the plaintiff made its written demand after the properties were sold and before signing the loan modification documents. *Id.*

*Suntrust Bank v. Hightower*, 291 Ga. App. 62 (2008), involved a putative class action filed by an original grantor who financed his home with a loan from SunTrust. Similar to the plaintiffs here, when Hightower paid off his loan, SunTrust failed to cancel the security deed within 60 days, as required by § 44-14-3. SunTrust filed a motion to dismiss the complaint on the grounds that plaintiff failed to make a pre-suit demand for damages, which was denied by the trial court. Although the Georgia Court

7

of Appeals reversed the trial court's order denying SunTrust's Motion to Dismiss, concluding that a written demand cannot be made for the first time in the complaint, plaintiff's standing as the original grantor was neither challenged nor raised as an issue.

Similarly, in *Shree Annpurana, Inc. v. Udhwani*, 255 Ga. App. 799 (2002), the plaintiff, the original grantor of a note secured by a second-in-priority security deed, sued the grantee for failing to cancel the security deed within 60 days of full payment of the note. The trial court granted summary judgment to defendant because plaintiff's written demand failed to include a request for liquidated damages, and the appellate court affirmed. Again, plaintiff's standing as the original grantor was neither challenged nor raised.

Contrary to Defendant's belief, the Court does not conclude that the aforementioned cases stand for the broad proposition that the limitation on standing advanced here would be just one more in a long line of cases narrowing § 44-14-3's reach in a permissible way. Only *Pinto* involves interpreting the scope of the term "grantor," and *Heritage*, in dicta, implies that original grantors *are* entitled to statutory damages when deeds are not cancelled in compliance with § 44-14-3. Put simply, Defendant has not articulated, and the Court fails to see, what legislative purpose would be served by excluding original grantors of the security interest from recovery. Although the Court is not stating that Defendant should be held to the burden of divining the intent of the Georgia legislature, the fact that Defendant's cannot offer one reason as to why the Georgia legislature would have intended to include successors in interest to the exclusion of original grantors of the security interest supports the conclusion that construing the statute to so exclude would be unreasonable and absurd.[2]

---

[2] In support of its position, Defendant also cites to the variations interpretations of standing other legislatures across the country use for their lien-release statutes. Ironically, none of these statutes excludes original grantors from relief—further evidence that construing a lien-release statute to only

Furthermore, the fact that Georgia legislature substituted the term "means" for the term "include" does not change the Court's conclusion. As the Court noted above, explicitly limiting to § 44-14-3's statutory penalties to successors in interest as the term "means" would require, if taken literally, would require that the Court completely ignore the legislative purpose behind the statute. *Georgia Power Co. v. Monroe Cnty.*, 284 Ga. App. 707, 709 (2007) ("When literal reading of the statute produces such an absurdity, the . . . court must then seek to make sense out of the statute, while being faithful to the legislative intent.") Common sense and reasoning are supposed to guide the Court's interpretation of § 44-14-3, in the absence of information regarding the legislature's reason for using the term "means" when defining "grantors." However, the Court can find no sensible reason as to why the Georgia legislature would want to confer remedial rights on "heirs, devisees, executors, administrators, successors, transferees, or assigns" against grantees while denying the same rights to the original grantor of the security deed. Defendant itself failed to proffer a reason underlying such an exclusion that would support a conclusion that the literal language of the statute should govern.

Finally, despite the statute's use of the term "means," in almost every case involving § 44-14-3 Georgia courts have ostensibly assumed that original grantors do have standing under the statute, routinely considering appeals brought by and against original grantors. *See, e.g., Schorr v. Countrywide Home Loans, Inc.*, 287 Ga. 570 (2010) (allowing named plaintiffs'—original grantors of the security deed—satisfaction of pre-suit conditions to satisfy the precondition requirement on behalf of the entire putative class); *SunTrust Bank*, 291 Ga. App. at 66-67 (denying relief to original grantor, but only on the grounds that grantor failed to make a pre-suit written demand as required by the statute); *Franklin Cred. Mgmt. Corp. v. Friedenberg*, 275 Ga. App. 236,

---

provide relief to successors in interest would be discordant with the manner in which these statutes are broadly applied in other jurisdictions.

237-39 (2005) (affirming trial court's judgment in favor of plaintiff-original grantor for liquidated damages pursuant to § 44-14-3); *Heritage Creek Dev. Corp*, 268 Ga. App. at 845 (noting in *dicta* that plaintiff-original grantor might have otherwise been entitled to damages had the written demand for cancellation of the security deed been made earlier); *Shree Annpurna, Inc.*, 255 Ga. App. at 799 (denying relief to an original grantor, but only on the grounds that the grantor failed to include a demand for liquidated damages in her pre-suit demand); *Tahamtan v. Chase Manhattan Mortg. Corp.*, 252 Ga. App. 113, 113 (2001) (considering and denying appeal from plaintiff-original grantor who alleged that mortgagee wrongfully failed to cancel a security deed in violation of § 44-14-3); *Dixon v. Cook Banking Co.*, 191 Ga. App. 861, 861-62 (1989) (considering and denying appeal from plaintiffs-original grantors because appellants failed to give the bank a written demand for cancellation of security deed); *Edenfield v. Trust Co. Mortg.*, 185 Ga. App. 678, 680 (1988) (affirming trial court's grant of summary judgment in favor of grantee against plaintiff-original grantor's claim for statutory penalties under § 44-14-3). *Pinto*, the only case standing for a contrary proposition, and the one upon which Defendant heavily relies, involved an original grantor who was no longer in possession of the property at the time he made a claim for statutory damages. To this end, *Pinto* does not negate the almost 30 years of judicial precedent presumptively conferring standing upon original grantors.[3]

Accordingly, the Court finds that the literal language of the term "grantor," as set forth in O.C.G.A. § 44-14-3, should not be read as excluding original grantors of the security deed in question. Consistent with *Pinto*, the Court's ruling only applies to

---

[3] The Court recognizes that the standing of original grantors does not appear to have been an issue in these cases, and thus, this could explain why the Georgia courts entertained the appeals of these cases without addressing the standing issue. However, the fact that plaintiffs, defendants, and competent jurists (who do not hesitate to state obvious (but never raised) issues in dicta, when applicable) have all accepted original grantors' standing as a natural outgrowth of § 44-14-3 is good evidence that parties have not read the phrase "'[g]rantor' means heirs, devisees, executors, administrators, successors, transferees, or assigns" as applying so literally, as Defendant would have this Court to do.

original grantors *currently* in possession of the property at the time the complaint is filed.

## III.  CONCLUSION

For all of the above reasons, Defendant Countrywide Home Loans, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 64) is **DENIED**.

**SO ORDERED**, this   18th   day of July, 2013.

                                                /s/     W. Louis Sands
                                                **THE HONORABLE W. LOUIS SANDS,**
                                                **UNITED STATES DISTRICT COURT**