UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| BRADLEY Y. SCHORR, and LORI A., SCHORR, individually and on behalf of a class of similarly situated persons, | : : : : | |
| Plaintiffs, | : : | CIVIL ACTION FILE NO. 4:07-cv-00019-WLS |
| v. | : : | |
| COUNTRYWIDE HOME LOANS, INC. and BANK OF AMERICA, N.A., | : : : | |
| Defendants. | : | |

## PLAINTIFFS' UNOPPOSED MOTION
## FOR PRELIMINARY APPROVAL OF SETTLEMENT

After years of litigation and with the assistance of a professional mediator, the parties have agreed to a settlement that, if approved by the Court, would resolve all of the class action claims asserted in in this case (pending since 2007), as well as the class claims that were originally asserted in *Jones v. Bank of America Corp.*, No. 4:08-CV-00152-WLS.  For the reasons set forth below, plaintiffs respectfully submit that the Court should preliminarily approve this settlement, certify the proposed class for purposes of settlement only, authorize the parties to notify the settlement class and set a date for a final fairness hearing.  Defendants (Countrywide Home Loans, Inc. ("Countrywide") and Bank of America, N.A. ("BANA") consent to all relief sought in this motion, although they deny all wrongdoing or liability in these cases and do not necessarily agree with the factual or legal positions expressed by plaintiffs.

1303156.1

1

Plaintiffs respectfully request that the Court convene a telephonic preliminary approval conference in which the parties may provide any further information that the Court may require. At that conference, the parties will request a date for a final fairness hearing, which will then determine the schedule for class notice, objections, opt-outs and claims.  Plaintiffs submit a proposed form of Order as Exhibit 1, and are authorized to state that Defendants consent to entry of this Order.  The parties will fill in the dates and other information based upon the schedule indicated by the Court during the preliminary approval conference.

## I.      Background of the Litigation

### A.      Georgia's Security Deed Cancelation Requirement

As the Court is aware, this case arises from alleged violations of O.C.G.A. § 44-14-3, which requires the grantee or holder of a security deed to cancel that deed within 60 days of full payment of the underlying indebtedness.  More specifically, the grantee or holder of the deed must transmit a legally sufficient satisfaction or cancelation of the deed to the clerk of the superior court of the country where the deed is recorded within that 60-day period.  Georgia law creates a private right of action for the failure to comply with this cancelation requirement. Upon demand and under the conditions and limitations of the statute, the grantee or holder shall be liable to the grantor for $500 in liquidated damages.  *See* O.C.G.A. § 44-14-3(c) & (c.1).

### B.      The Schorrs' Lawsuit

Plaintiffs Bradley and Lori Schorr granted a deed on their house to secure a loan.  When they paid off their loan, they requested in writing that Countrywide cancel the deed.  They allege that Countrywide, acting through its loan servicing entity (Countrywide Home Loans Servicing, LP), failed to cancel the deed within the period required by O.C.G.A. § 44-14-3.  Several months later, the Schorrs demanded in writing the $500 liquidated damages to which they were entitled

under that Code Section.  Countrywide refused to pay.  *See* Dkt. No. 145 (Amended Complaint and attachments).

On February 12, 2007, the Schorrs filed suit in federal district court, on behalf of themselves and a class of similarly situated owners of properties as to which Countrywide had similarly failed to cancel security deeds as required by law.  In response to a question certified by this Court, the Georgia Supreme Court confirmed that the Schorrs' pre-suit demand satisfied the pre-suit demand for damages on behalf of each proposed class member.  *Schorr v. Countrywide Home Loans, Inc.*, 287 Ga. 570 (2010).

**C.      Bank of America Acquired Countrywide, and Defendant BANA Merged with Countrywide's Loan Servicing Company**

After the Schorrs filed suit, Bank of America Corporation acquired Countrywide Financial Corp.  Countrywide's loan servicing entity (Countrywide Home Loans Servicing, LP) then merged into and became BANA.  As BANA explained to this Court in another case:  "In April 2009, Countrywide Home Loans Servicing, LP changed its name to BAC Home Loans Servicing, LP.  On July 1, 2011, BAC Home Loans Servicing, LP merged with and into BANA."[1]  As a result, Countrywide's loan servicing entity "is now BANA."  *Id.* at 2.  Thus, "the terms Countrywide and BANA can be used interchangeably."[2]  Accordingly, the Schorrs now assert their claim against both Countrywide and BANA, as the current form of the Countrywide entity that serviced their loan.  The Court has granted leave for the Schorrs to add BANA as a

---

[1]  *See* Dkt. No. 89-1 (Ex. A) (excerpt of "Defendant's Motion to Dismiss and Incorporated Memorandum of Law," filed in *Shedd v. Bank of America, N.A.*, Case No. 4:11-CV-00202-CDL at 2 n.2).

[2]  *See* Dkt. No. 89-2 (Ex. B) (excerpt of "Motion to Dismiss and Incorporated Memorandum of Law," filed in *Countrywide Home Loans Servicing, LP v. Shedd*, Case No. CJ-2009-22, District Court of Washington County, State of Oklahoma) at 1 n.1 (describing merger).

party defendant, and the Schorrs filed that amended complaint.  Dkt. Nos. 144, 145.

## II.        The Mediation and the Proposed Settlement

In a July 2013 telephone conference, the Court directed counsel to advise their clients about alternative dispute resolution options, including mediation.  Dkt. No. 87.  In February 2014, this Court stayed this case at the parties' request to give them time to obtain and analyze the data regarding the defendants' loan cancellations, to engage a mediator and to explore settlement.  Dkt. No. 127.  The Court granted additional extensions to allow the parties to complete their negotiations, most recently by Order of October 30, 2014.  Dkt. No. 140.

When this Court stayed proceedings to allow the parties to mediate, two primary disputes had been briefed in *Schorr*, but not yet decided.  First, the parties had briefed Countrywide's motion asking the Court to determine which statute of limitations applies to these claims.  *See* Dkt. Nos. 94, 107, 117, 122.  Code Section 44-14-3 does not contain or reference any specific statute of limitations.  Countrywide took the position that the one-year statute of limitations for civil penalties applies, which would eliminate even the Schorrs' claim.  *Id.*  The Schorrs contended that the 20-year statute for enforcing remedies granted by statute governs the case or, in the alternative, that the case falls under the six-year statute for breach of contract.  *Id.*  Second, the parties had briefed the Schorrs' motion for class certification.  *See* Dkt. Nos. 76, 111, 115, 119.  Countrywide opposed certification on a number of grounds.  *Id.*

With the benefit of the Court's stay, the parties have agreed upon a settlement that, if approved by the Court, would resolve the claims of all settlement class members under Georgia's deed cancellation statute against Countrywide and BANA, using the most favorable limitations period proposed by plaintiffs—20 years.

### A.   **The Settlement Class.**

Plaintiffs propose, and defendants consent, to certification of the following Settlement Class solely for purposes of settlement:  (a) All persons who own or owned Georgia residential property, with ownership to be determined in accordance with this memorandum; (b) that was subject to a security instrument for which Countrywide and its affiliates or BANA and its affiliates; (c) acted as servicer; (d) did not transmit a legally sufficient satisfaction or cancellation of lien to the appropriate Superior Court Clerk; (e) upon payment in full of the underlying mortgage loan; (f) in accordance with O.C.G.A. § 44-14-3; (g) from February 12, 1987 through the date of preliminary approval.  A property meeting requirements (b)-(g) is referred to as a "Settlement Property."

All persons owning a Settlement Property on the date of preliminary approval shall be included in the Settlement Class.  In addition, for loans where the satisfaction was due to be released before February 12, 2007, all persons who owned a Settlement Property as of the date of the filing of this action (February 12, 2007) shall also be included in the Settlement Class. Persons who sold or otherwise transferred their ownership of a Settlement Property prior to the date of filing of this action shall not be included in the Settlement Class.[3]

### B.   **The Terms of Settlement.**

The principal terms of settlement may be summarized as follows:

---

[3] Excluded from the Settlement Class are: (a) individuals who are or were during the class period partners, associates, officers, directors, shareholders, or employees of Countrywide or BANA; (b) all judges or magistrates of the United States or any state and their spouses; (c) all individuals who timely and properly request to be excluded from the class, *i.e.*, opt out; (d) all persons who have previously released Countrywide or BANA from claims covered by this Settlement; and (e) all persons who have already received payment from Countrywide or BANA for alleged violation of O.C.G.A. §44-14-3 with respect to a Settlement Property (unless that person is a member of the Settlement Class by virtue of his or her ownership of a different Settlement Property as to which he or she has received no such payment).

- The defendants will pay valid claims up to a total of $8.5 million, subject to the reduction for notice and administration costs described below.  Each class member submitting a valid claims form will receive $500, except that (1) multiple claimants submitting valid claims on the same property and security instrument will divide the $500 per capita and (2) all claims will be reduced pro rata to the extent that the amounts claimed exceed $8.5 million.   The proposed claims form is attached as Exhibit 2.

- Up to $500,000 of the $8.5 million allotted to pay claims may be used to cover the costs of notice and settlement administration, as further described in the parties' Settlement Agreement.  The defendants will pay all costs of notice and administration exceeding $500,000.

- Without reducing the amounts available for distribution to the class, defendants will pay class counsel attorney fees and expenses and class representative compensation to the Joneses and the Schorrs, all as approved by the Court and up to a negotiated cap.[4]

- The class members will release all claims against the defendants and related parties arising from the timeliness, sufficiency or form of the satisfaction and/or cancellation of the security instruments related to their properties.[5]

Accordingly, the proposed settlement would resolve all claims by—and afford relief to—all persons entitled to recover damages against Countrywide and/or BANA under O.C.G.A. § 44-14-3.

Plaintiffs note that the dismissal of the related *Jones* action does not preclude persons with valid claims against BANA from participating in this settlement as class members.  The Court decided only that the Joneses lacked standing to recover under Section 44-14-3 because they sold the underlying property before they filed suit.  *See* Dkt. # 69 in *Jones v. Bank of America Corp.*, No. 4:08-CV-00152-WLS (citing *Associated Credit Union v. Pinto*, 297 Ga.

---

[4] As plaintiffs will show in this motion for final approval, plaintiffs contend that the Joneses were instrumental in obtaining relief for settlement class members who dealt with BANA, even though the Joneses lost their individual claim.  Accordingly, the proposed settlement calls for an award to the Joneses at defendants' expense, subject to a cap and Court approval.

[5] The full Settlement Agreement is attached hereto (without exhibits) as Exhibit 3 and governs over the summary set forth above.

App. 605 (2009)).  As of the date of that dismissal, however, the Court had not certified any class in *Jones*.  Nor had it disseminated class notice affording anyone a chance to opt out of any class.  *See* Fed. R. Civ. P. 23(c).  Thus, the Court's order dismissing the case disposed only of the Joneses' individual claim, and only on the basis that they had sold their property before they filed suit.  In contrast to the Joneses, the Schorrs still own the property that once secured their loan.  Further, as explained above, the Schorrs assert their individual claim against both Countrywide and BANA, since the Countrywide entity that serviced their loan is now BANA.  For these reasons, the *Jones* dismissal does not bar anyone who *does* have standing under the *Associated Credit v. Pinto* decision from participating as a class member in this proposed settlement of all claims against Countrywide and BANA, with the Schorrs as class representatives.

**III.    The Court Should Grant Preliminary Approval of the Proposed Settlement.**

    **A.      The Law Governing Approval of Class Action Settlements**

Approval of a class action settlement occurs in several steps.  First, the district court conducts a preliminary evaluation of the fairness and adequacy of the settlement to determine whether there is good reason to schedule a full fairness hearing and notify the class.[6]  This examination is generally "made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties."  Manual for Complex Litigation (Fourth) § 21.632, at 320-21; *see also* 4 Newberg on Class Actions § 11:25 (4th ed. 2002).

---

[6] *See* Manual for Complex Litigation (Fourth) § 21.632 at 320-21; *In re Skinner Group, Inc.*, 206 B.R. 252, 261-62 (Bankr. N.D. Ga. 1997); *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 562 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998); *In re Automotive Refinishing Paint Antitrust Litig.*, 2004 WL 1068807, at *1-2 (E.D. Pa. May 11, 2004).

"A preliminary fairness assessment 'is not to be turned into a trial or rehearsal for trial on the merits,' for 'it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.' Rather, the Court's duty is to conduct a threshold examination of the overall fairness and adequacy of the settlement in light of the likely outcome and the cost of continued litigation." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 350 (N.D. Ohio 2001) (citation omitted).

If the settlement appears fair and adequate upon a preliminary examination, then the court directs plaintiffs to send notice of the proposed settlement to the class. After receiving any comments and objections from class members, the court conducts a final fairness hearing on settlement approval. *See* Manual for Complex Litigation, Fourth, § 21.632 at 320-21; *In re Skinner*, 206 B.R. at 261-62; *McNamara*, 214 F.R.D. at 426; *In re Prudential Ins.*, 962 F. Supp. at 562.

Before granting final approval to a class settlement, "the district court must find that it 'is fair, adequate and reasonable and is not the product of collusion between the parties.'" *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir.1984) (quoting *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir. 1977)). At the final fairness hearing, the court evaluates the settlement in light of the following factors "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Bennett*, 737 F.2d at 986; *see also Sterling v. Stewart*, 158 F.3d 1199, 1204 (11th Cir. 1998).

Courts should evaluate these factors in light of "the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett*, 737 F.2d at 986. "Particularly in class action suits, there is an overriding public interest

in favor of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).  "'[A]ccordingly class-action settlements will be disapproved only upon 'considerable circumspection.'" *Mashburn v. National Healthcare, Inc.*, 684 F. Supp. 660, 667 (M.D. Ala. 1988) (quoting *Jamison v. Butcher & Sherrerd,* 68 F.R.D. 479, 481 (E.D. Pa. 1975)).

"[I]n evaluating the terms of the compromise in relation to the likely benefits of a successful trial, the trial judge ought not try the case in the settlement hearings. . . . It cannot be overemphasized that neither the trial court in approving the settlement nor this Court in reviewing that approval have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute." *Cotton*, 559 F.2d at 1330.  "Neither should it be forgotten that compromise is the essence of a settlement.  The trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.'" *Id.* (quoting *Milstein v. Werner*, 57 F.R.D. 515, 524-25 (S.D.N.Y. 1972)).

Moreover, "[i]n performing this balancing task, the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330 (citation omitted). So long as the court is confident that the parties bargained without fraud or collusion, it "should be hesitant to substitute its own judgment for that of counsel." *Id.*

**B.     The Court Should Grant Preliminary Approval of the Settlement**

This settlement is at the first stage described above, in which the Court conducts a preliminary examination to determine whether it appears to be fair, reasonable and adequate and that there is good reason to give notice to the class.  With a forward eye towards the factors for final approval identified in *Cotton* and *Bennett*, the Court should grant preliminary approval of the settlement and direct plaintiffs to notify the class.

      **1.     The Proposed Settlement Is Reasonable in Light of the Possible Recovery and Uncertainty of Outcome at Trial.**

The first three factors the Court will consider on final approval are "(1) the likelihood of success at trial; (2) the range of possible recovery; [and] (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable ...." *Bennett*, 737 F.2d at 986.

Subject to the conditions described above, this settlement allows a valid claimant to recover the full statutory damages of $500, taking advantage of the longest possible limitations period of 20 years.  While the negotiated cap on total settlement payments could lead to a pro rata reduction of the per claimant amount below $500, that would not occur at all unless over 16,000 class members file claims.  In any event, the prospect of such a pro rate reduction does not negate the fairness, adequacy or reasonableness of this settlement.  Were this litigation to continue, there is no assurance of recovering anything on behalf of the class.  This Court might deny class certification, which is contested by the defendants.  Or the Court might determine that a one-year statute of limitations applies, which would deny recovery to the vast majority of the Settlement Class and leave no class representative with a valid claim.  Or the Court might decide that the case is governed by the six-year statute of limitations, which would deny much of the 20-year Settlement Class any recovery.

This settlement easily falls within the range of reasonableness approved by courts in this circuit and elsewhere.  In *In re Domestic Air Transportation Antitrust Litigation*, for example, the Northern District of Georgia approved a settlement by all defendants (paid in discount coupons for future air travel, rather than cost) equal to 12 to 15% of the potential recovery before trebling under antitrust law.  As the Court reasoned:

> That the proposed settlement amounts to a fraction of potential recovery does not render the proposed settlement inadequate and unfair.  "In fact, there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."

148 F.R.D. 297, 325 (N.D. Ga. 1993) (quoting *Detroit v. Grinnell Corp.,* 495 F.2d 448, 455 n.2 (2d Cir. 1974)).  Here, even if every possible class member claimed, the per class member recovery could not drop to anything even close to 12-15% of the $500 in maximum statutory damages.  Moreover, other federal courts have approved settlements representing a smaller percentage of the potential recovery than the 12-15% of the recovery approved in *In re Domestic Air.*[7]  In sum, the settlement here falls well within the ranges previously approved by this Court and other federal courts, some of which were paid in discount coupons on future purchases, rather than cash, like the settlement proposed here.  Thus, the first three *Bennett* factors will weigh heavily in favor of final approval.[8]

> ### 2.   The Proposed Settlement is Reasonable in Light of the Complexity, Expense and Duration of the Litigation.

The Eleventh Circuit has also directed district courts to consider the reasonableness of proposed class settlements in light of "the complexity, expense and duration of litigation." *Bennett*, 737 F.2d at 986.  This factor also favors preliminary approval of this proposed

---

[7] *See, e.g., Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542-43 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) (approving settlement equal to 3 to 5% of the per share recovery sought by plaintiffs and observing that "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate"); *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 698 (M.D. Fla. 2005) (approving settlement equal to about 2% of expert's damages calculation); *In re Currency Conversion Fee Antitrust Litig.*, 2006 WL 3247396, at *6 (S.D.N.Y. Nov. 8, 2006) (approving settlement constituting "roughly 10-15%" of the allegedly illegal fees collected from the class); *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 581 & n.4 (E.D. Pa. 2003) (collecting cases approving settlements for low fractions of potential recovery); *see generally Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.,* 2005 WL 1213926 at *9 (E.D. Pa. May 19, 2005) (Recovery of 11.4% of estimated damages "compares favorably with the settlements reached in other complex class action lawsuits.").

[8] As an additional consideration, the data concerning loan cancelations produced in this case and in the similar cases filed by class counsel before this Court involving Wells Fargo and HomeEq (consolidated as Civil Action No. 4:07-cv-00014-WLS) have confirmed that banks lending in Georgia have dramatically increased their compliance with Georgia's deed cancelation statute.  Plaintiffs contend that that is a result of these cases.

settlement.  The settlement offers class members a certain and substantial recovery of up to $500 per claim, which is the maximum amount recoverable under O.C.G.A. § 44-14-3.  As noted above, there is no assurance of any recovery, let alone a larger one, if the litigation continues through motions, trial and appeal.  The only assurance is that—absent settlement—those proceedings would consume the resources of the parties and of this Court for a year or more to come, during which class members would receive no payment.  Thus, considering "the complexity, expense and duration" of continued litigation, the Court should preliminarily approve this settlement.

> **3.** **The Proposed Settlement Is Reasonable in Light of the Stage of the Proceedings at Which It Was Achieved.**

As the sixth factor, this Court must consider "the stage of proceedings at which the settlement was achieved."  *Bennett*, 737 F.2d at 986.  This factor also supports preliminary approval.  Discovery, data exchange and briefing have progressed to the point that plaintiffs fully understand their case and the key positions of the defendants.  Just as the Court urged counsel in the July 2013 telephone conference, these cases had reached the stage where mediation was appropriate.

Settlements reached with the benefit of far less information have been readily approved and affirmed in this Circuit.[9]  This case had progressed to the point where both plaintiffs and the Court have sufficient information to determine that the settlement is fair, adequate and

---

[9] *See, e.g., Cotton,* 559 F.2d at 1332 (affirming approval of settlement with little formal discovery); *Mashburn*, 684 F. Supp. at 669 ("The law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations [regarding the fairness of the settlement].") (citations omitted); *Woodward v. NOR-AM Chem. Co.*, 1996 WL 1063670, at *21 (S.D. Ala. May 23, 1996) ("Full discovery of the kind needed to try a complex case would defeat the purpose of class settlement. . . . Sufficient discovery to permit counsel and the parties to fairly evaluate the liability and financial aspects of a case are all that are either necessary or prudent.").

reasonable.[10]  So this factor favors preliminary approval as well.

> ### 4.      There is No Collusion or Fraud.

The parties have litigated vigorously since *Schorr* was filed in 2007, both in this Court and the Georgia Supreme Court.  They reached a proposed settlement only with the help of a professional mediator and only after a protracted series of meetings and calls.  Based on the history of this case, the Court's observations of counsel and the substantive terms of the deal, the Court may be confident that the proposed settlement is the product of arm's length negotiations, informed by years of hard-fought litigation.

## IV.    The Court Should Certify a Settlement Class, Appoint Class Counsel, Schedule a Final Fairness Hearing and Authorize the Parties to Implement Their Class Notice Plan.

"Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (citation omitted).  However, the Court must determine that the proposed Settlement Class satisfies the requirements of Fed. R. Civ. P. 23(a), as well as at least one of the subsections of Fed. R. Civ. P. 23(b).  *Id.*; *see also* Manual for Complex Litigation (Fourth) § 21.632.

> ### A.    The Proposed Settlement Class Satisfies Rule 23(a).

Rule 23(a) imposes four requirements.  First, the class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "The numerosity requirement is met when it would be inconvenient or difficult to join all of the class members, and may be satisfied with as few as 25-30 class members."  *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D.

---

[10] At the final fairness hearing, this Court will also have to consider "the substance and amount of opposition to the settlement" received by the Court after dissemination of notice. *Bennett*, 737 F.2d at 986.  At this stage, plaintiffs are not aware of any opposition.

672, 684 (S.D. Fla. 2004).  Here the class includes well over ten thousand members, easily making joinder impracticable.

Second, there must be at least one question of law or fact common to the proposed class. Fed. R. Civ. P. 23(a)(2).  "This requirement is generally considered very easy to satisfy because the 'threshold of "commonality" is not high.'"  *Mauldin v. Wal-Mart Stores, Inc.*, 2002 WL 2022334, at *9 (N.D. Ga. Aug. 23, 2002) (quoting *Jenkins v. Raymark Indus.,* 782 F.2d 468, 472 (5th Cir. 1986)).  Here there are common questions of law and fact, such as whether the defendants complied with their duty to cause to be furnished satisfactions or cancellations of indebtedness in accordance with O.C.G.A. §44-14-3.  Members of the class share a common interest in demonstrating that the defendants failed to fulfill that duty, entitling the class members to the statutory damages.

Third, the claims of the class representatives must be "typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Again, that is easily true here, where the named plaintiffs and all class members assert claims under the same statute for the same conduct—the failure to timely cancel security deeds as required by Georgia law.  As in other cases certified in this Circuit, "the named plaintiffs' claims stem from the same legal theory as that of the class claims."  *In re Domestic Air Transportation Antitrust Litigation*, 137 F.R.D. 677, 698-99 (N.D. Ga. 1991).

Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "This requirement involves a two-part inquiry:  (1) whether Plaintiffs possess interests that are antagonistic to the interests of other class members, and (2) whether the proposed class' counsel possesses the qualifications and

experience to conduct the litigation." *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 690-91 (N.D. Ga. 2003).

As to the first inquiry, the named plaintiffs and the class members do not possess antagonistic interests that would preclude class certification. Instead, they share a core interest in obtaining compensation from the defendants for the untimely cancelation of security deeds on their properties. Like all members of the settlement class, the Schorrs possess a claim under O.C.G.A. § 44-14-3, and the Schorrs have owned the property underlying their claim at all times potentially relevant to their claim. Their loans were serviced by a Countrywide affiliate that is now, by virtue of merger and acquisition, defendant BANA. Accordingly, the Schorrs assert their claim against both BANA and Countrywide. The fact that the Schorrs dealt with Countrywide prior to this merger and acquisition, rather than afterwards, does not change any element of their claim. Nor does it deprive them of the ability to fairly and adequately protect the interests of all members of the settlement class, all of whom assert claims against BANA either because they dealt with BANA before the merger and acquisition or because they dealt with the Countrywide loan servicing entity that became BANA.

As to the second Rule 23(a)(4)inquiry—adequacy of counsel—the class would be represented by attorneys and firms with substantial class action experience. This is addressed in more detail below, with respect to the factors in Fed. R. Civ. P. 23(g).

### B. The Proposed Settlement Class Satisfies Rule 23(b)(3).

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "Common issues of fact and law predominate if they 'ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and

monetary relief.'"  *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004) (quoting *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 699 (N.D. Ga. 2001)).

That test is satisfied here.  The core issue common to all class members is whether the defendants are liable for statutory damages under O.C.G.A. § 44-14-3 for failing to timely cancel the security deeds on their properties.  The only facts that vary by class member—such as the identity of the property, the date of loan payoff and the date of deed cancelation—do not predominate because they can be manageably be proved and verified during the claims process with business records.  Indeed, in the course of settlement discussions, defendants have already produced spreadsheets identifying the properties as to which it appears that deed cancelation was not timely.  "Common issues predominate where individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria – thus rendering unnecessary an evidentiary hearing on each claim."  *Smilow v. Southwestern Bell Mobile Sys., Inc.,* 323 F.3d 32, 40 (1st Cir. 2003).

Rule 23(b)(3) also inquires whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  As the Eleventh Circuit has instructed, the task is "not assessing whether this class action will create significant management problems, but instead determining whether it will create relatively more management problems than any of the alternatives (*including, most notably… separate lawsuits by the class members*)."  *Klay*, 382 F.3d at 1273 (emphasis added).  Here, there is no question that a single class action is superior to 10,000 or more lawsuits by individual plaintiffs, each seeking to recover $500 from the same defendants based on the same cause of action.

C.      **The Court Should Appoint Class Counsel**.

Respectfully, plaintiffs ask the Court to appoint the law firm of Charles A. Gower, P.C. as lead counsel for the Settlement Class and the law firm of Philips-Branch as co-lead counsel for the Settlement Class.  These firms have represented the proposed classes since the outset of these cases.  The factors set forth in Rule 23(g) weigh in favor of appointing these counsel to represent the Settlement Class.

First, the Court must consider "the work counsel has done in identifying or investigating potential claims in the action."  Fed. R. Civ. P. 23(g)(1)(A)(i).  Here, these counsel have done all of the work necessary to identify and support the claims of the class members under O.C.G.A. § 44-14-3.  Moreover, counsel have done all of the work necessary to advance these claims to the point of settlement.  This includes briefing class certification, multiple motions to dismiss and motions regarding the statute of limitations, as well as representing the proposed class in the mediation.

Second, the Court must consider "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in this action."  Fed. R. Civ. P. 23(g)(1)(A)(ii).  As set forth in the supporting declarations, these counsel have handled numerous consumer class actions,[11] including multiple class cases under the deed cancelation statute at issue here.

---

[11] These attorneys have already been appointed class counsel or have served as co-counsel in the following class action cases:  *Toole v. J.M.I.C. Life Ins. Co.*, No. SU2003cv246 (Muscogee Co., GA, 2005), *aff'd*, *J.M.I.C. Life Ins. Co. v. Toole*, 280 Ga. App. 372, 376 (2006), *cert. denied* Oct. 30, 2006); *Bishop v. Protective Life Ins. Co.*, No. 4:05cv126 (M.D. Ga.); *Baker v. American Heritage Life Ins. Co.*, No. SU08cv1296 (Muscogee Co., GA); *Parker v. Life Investors*, No. 04cv3687 (Muscogee Co., GA); *Perkins v. American Nat'l Ins. Co.*, No. 3:05cv100 (M.D. Ga.); *Caron v. Plateau Ins. Co.*, No. cv004295 (Cumberland Co., Tenn.); *Desportes v. American Gen. Assurance Co.*, No. SU04cv3637 (Muscogee Co., GA); *Carter v.*

Third, the Court must consider "counsel's knowledge of the applicable law." Fed. R. Civ. P. 23(g)(1)(A)(iii). Counsel have demonstrated that knowledge through the briefing submitted in this Court on class certification, motions to dismiss, the statute of limitations and the successful briefing in the Georgia Supreme Court on the certified question.

Finally, the Court must consider "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(iv). Counsel commit to bringing all legal and financial resources necessary to pursue the class claims, and they have demonstrated that commitment by pursuing this case since 2007 in this Court and the Georgia Supreme Court.

### D.     The Court Should Schedule a Fairness Hearing and Authorize Class Notice.

The proposed method of notice satisfies the requirements of the Federal Rules of Civil Procedure and should be approved by the Court. Notice of class certification of a Rule 23(b)(3) class under Rule 23(c)(2) must be "the best practicable notice under the circumstances." Fed. R. Civ. P. 23(c)(2). Under Rule 23(c)(2), the notice must provide the following information: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). *Id.* Here, the proposed notices comply fully with these requirements. *See* Proposed Post Card Notice and Long Form Notice, attached hereto as Exhibits 4 & 5. Both notices direct class members to a website maintained by the settlement administrator with detailed information about the litigation, the full settlement agreement, links to key pleadings and clear instructions regarding claims deadlines and other procedures.

---

*North Central Life Ins. Co.*, No. SU2006cv3764 (Muscogee, Co., GA); *Pierce v. Universal Underwriters Life Ins. Co.*, No. SU2003cv377 (Muscogee Co., GA).

The parties propose that the Court appoint Epiq Systems to serve as the administrator for purposes of notifying the Settlement Class.  Epiq is highly experienced in administering settlements in class action cases, including notifying the class members.  *See, e.g.,* www.epiqsystems.com/class-action/current-cases/ (listing cases currently under administration) & www.epiqsystems.com/class-action/class-action-overview/ (overview of class experience).

The loans at issue were secured by real property, so defendants have an address associated with each property.  The settlement administrator will mail the Post Card Notice of the settlement directly to these addresses, thereby notifying those persons who are members of the class because they own the properties at issue as of the date of preliminary approval.  As set forth above, those who owned these properties when this case was filed are also members of the Settlement Class who can submit claims.  To the extent that those persons are different than the owners as of preliminary approval, the settlement administrator has developed a combined plan of individual and publication notice, supplemented with a settlement website, to notify those owners.  *See* Exhibit 6 (detailing publication notice plan) and Exhibit 7 (publication notice). Publication notice is the best practical notice to reach the minority of class members who moved after filing of the lawsuits but before preliminary approval and for whom the parties have not been able to locate a name and address, since their names and addresses are not available in the defendants' records or through any other reasonably accessible and cost-effective means.[12]

---

[12] The Eleventh Circuit has approved publication notice under those circumstances.  *See, e.g., Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012) "Where certain class members' names and addresses cannot be determined with reasonable efforts, notice by publication is generally considered adequate.").  In *Juris*, the Eleventh Circuit upheld a class notice plan that relied heavily on publication notice, citing other cases approving such plans, including *In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 145, 168–69 (2d Cir.1987) and *Gordon v. Hunt,* 117 F.R.D. 58, 63 (S.D.N.Y.1987).  Other courts have recently cited *Juris* and approved notice by publication where addresses were not reasonably available for some or all of the class.  *See, e.g.,*

Persons receiving notice by Post Card or publication will be directed to a comprehensive settlement website that includes the Long Form Notice (Exhibit 5), along with other information about the litigation and the settlement, the full Settlement Agreement and other key documents from this litigation.  Accordingly, for the foregoing reasons, Plaintiffs respectfully request the Court to approve the proposed notice plan and authorize mailing and publication of the notice.

## Conclusion

For the reasons set forth above, the Court should grant preliminary approval of the proposed settlement.  Plaintiffs respectfully request that the Court convene a telephonic conference in which the parties may provide any further information that the Court may require.  At that conference, the parties will request a date for a final fairness hearing, which will then determine the schedule for class notice, objections, opt-outs and claims.  The parties have prepared a preliminary approval order, attached hereto as Exhibit 1, and will prepare a final version with the approval schedule and any other modifications required by the Court after the conference.

This 10th day of February, 2015.

Respectfully submitted:

/s/ *Frank M. Lowrey IV*
MICHAEL B. TERRY
Georgia Bar No. 702582
FRANK M. LOWREY IV
Georgia Bar No. 410310
BONDURANT MIXSON & ELMORE LLP
1201 W. Peachtree St. NW
3900 One Atlantic Center
Atlanta, GA 30309
(404) 881-4100

---

*Hughes v. Kore of Indiana Enterprise, Inc.*, 731 F.3d 672, 676-77 (7th Cir. 2013); *Ross v. Trex Co., Inc.*, 2013 WL 791229, at *2 (N.D. Cal. 2013).

1303156.1

CHARLES A. GOWER
Georgia Bar No. 303500
C. AUSTIN GOWER, JR.
Georgia Bar No. 303528
**CHARLES A. GOWER, P.C.**
1425 Wynnton Road
P. O. Box 5509
Columbus, Georgia  31906
(706) 324-5685

BEN B. PHILIPS
Georgia Bar No. 575550
**PHILIPS-BRANCH**
1415 Wynnton Road
Post Office Box 2808
Columbus, Georgia 31902
(706) 323-6461

*Attorneys for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I have this date electronically filed with the Clerk of the Court this

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF**

**SETTLEMENT** using the CM/ECF system which will automatically send e-mail notification of

such filing to all attorneys of record.

This 10th day of February, 2015.

/s/ *Frank M. Lowrey IV*
FRANK M. LOWREY IV
Georgia Bar No. 410310